Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6986 | **DATE** | August 28, 2002 |
| **CASE TITLE** | Ratliff v. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment (doc. #82-1);
Plaintiff's Motion for Partial Summary Judgment (doc. #83-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment (#82-1) is **GRANTED**, and Plaintiff's motion for partial summary judgment (#83-1) is **DENIED**. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | **AUG 2 9 2002** | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | 100 |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
DOCKETED

AUG 2 9 2002

| | |
|---|---|
| MARQUETTA R. RATLIFF, | ) |
| Plaintiff, | ) |
| | ) NO. 99 C 6986 |
| v. | ) |
| | ) JUDGE WILLIAM J. HIBBLER |
| CITY OF CHICAGO, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marquetta Ratliff ("Ratliff") filed this lawsuit against her former employer, the City of Chicago ("the City"), alleging disability discrimination, failure to accommodate, and retaliation, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. § 2000e, *et seq.* Ratliff now moves for partial summary judgment on the basis that the City's medical leave policy violates the ADA as a matter of law, while the City moves for summary judgment, contending that Ratliff has neither satisfied her threshold burden of establishing a prima facie case of discrimination, nor demonstrated pretext. For the following reasons, Ratliff's motion for partial summary judgment is **denied**, and the City's motion for summary judgment is **granted.**

### I. BACKGROUND[1]

Ratliff, an African-American woman, was employed by the City as a laborer for the Department of Streets and Sanitation from June 1993, until her termination on April 29, 1999. Ratliff started off as a seasonal laborer, but in June 1995, the City changed her status to career service laborer. The laborer classification, as described in a July 1992 position description prepared by the City, is a physically

---

[1]Many of the factual contentions in this case are disputed by the parties. Thus, for the sake of clarity, the Court will provide only a brief summary of the undisputed facts in the Background section, and then lay out all other relevant information throughout the Analysis.

demanding job that requires, among other things, the "ability to perform strenuous physical tasks and to walk long distances," as well as "lift and carry up to 75 lbs continuously," while being constantly exposed to "inclement weather and a noisy, dusty, oily or wet environment" and "working in cramped, very dirty and unpleasant surroundings." (Pl.'s App. of Exs. in Supp. of her Mot. for Partial Summ. J., Ex. 10). Several individuals noted, however, that the job description was likely outdated concerning the amount laborers were required to lift, as the weight was probably closer to 50 lbs, not 75-100 lbs.

The City assigned laborers to one of four positions: (1) street sweeping; (2) graffiti removal; (3) garbage truck duty; or (4) rodent control. During her tenure with the City, Ratliff performed each position. Her final assignment immediately prior to her termination, though, was garbage truck duty in Loop Operations located on Lower Wacker Drive in downtown Chicago. Laborers on garbage truck duty generally had to ride hanging on the back of the truck, and repeatedly jump on and off the truck to manually lift and empty heavy, metal trash receptacles.

Ratliff maintains that she was unable to perform garbage truck duty because she suffered from asthma and the truck fumes as well as the lifting of garbage containers exacerbated her condition. In June 1998, Ratliff submitted a form entitled "Request for Reasonable Accommodation" to the City via her union representative, Craig Kumerow, but the City returned the form to Kumerow without processing the request because Ratliff had not filled it out properly. For instance, when asked to state the nature of her disability, Ratliff wrote "N/A," and then when questioned further as to how her disability specifically affected her job performance, Ratliff again wrote "N/A." Furthermore, Ratliff requested a transfer to the position of "Refuse Collection Coordinator," a supervisory position. The City says it directed Kumerow to instruct Ratliff to fill out a new form with all relevant information. Ratliff did not resubmit another written accommodation request form to the City, but she does claim that she asked her general superintendent, Bruce Bertalmio, immediate supervisor, Larry Hopewell, and others about transferring to another position to accommodate her asthma on several occasions in December 1998.

Finally, on January 29, 1999, Ratliff submitted to the City a written "Request for Leave of Absence," seeking 3 months of leave and listing "personal business" as the reason. The City approved Ratliff's request effective January 30, 1999, and indicated a leave expiration date of April 30, 1999. However, in late March 1999, Ratliff asked to return to work early from her personal business leave of absence. The City approved Ratliff's request and reinstated her as a full-time employee effective March 24, 1999. Ratliff then submitted to Rich Johnson, the Assistant Commissioner of Sewers, a note from Dr. Dharam Paul, M.D., dated March 27, 1999, indicating that Ratliff had been ill since March 25, 1999 with chest pains and that she was fit to return to work on March 29, 1999 but advised not to lift heavy weights. After consulting with Catherine Hennessy, the City's Assistant Commissioner for the Department of Streets and Sanitation, Johnson informed Ratliff that she needed to submit another doctor's note that specified her lifting restrictions.

In late April 1999, Ratliff appeared at Hennessy's office with a second note dated April 22, 1999, purportedly from Dr. Paul, stating that Ratliff was examined on March 25 and 27, 1999, for chest pain, asthma, and difficulty in breathing while lifting weight, and that Ratliff could return to work on March 29, 1999, with the restriction not to lift over 15 lbs of weight. Hennessy informed Ratliff that because the laborer position required that she be able to lift up to 50 lbs, and there was no light duty work available, Ratliff needed to either report to work or apply for another leave of absence until Ratliff was able to fulfill her job responsibilities. Ratliff responded that she did not want to take another leave of absence, instead she wanted a new job. Hennessy then directed Ratliff to go to the Department of Personnel to be evaluated for another position, but in the meantime, she needed to show up at work, request another leave, or call in every day to avoid being terminated.

Ratliff did not follow-up with Personnel, report for work or seek another leave of absence. On April 29, 1999, the City notified Ratliff that because she had been absent from work for more than five consecutive days since March 22, 1999, without notifying an authorized Department Supervisor, her

employment had been terminated.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts and inferences are viewed in the light most favorable to the non-moving party. *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1998). Additionally, in employment discrimination cases, this standard is applied with added rigor because intent and credibility are crucial issues. *Id.* (citation omitted). However, the use of self-serving assertions, without factual support in the record, will not defeat a motion for summary judgment. *Id.* (citation and internal quotation omitted). Instead, the party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). Indeed, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there can be no genuine issue as to any material fact. *Celotex*, 477 U.S. at 322-23.

## ANALYSIS

### I. Ratliff's ADA Claims

The ADA states that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees ..." 42 U.S.C. §12112(a). Furthermore, the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. . . " 42 U.S.C. § 12112(b)(5)(A). Ratliff alleges the City violated the ADA by intentionally discriminating against her because of her disability, and refusing to accommodate her disability by placing her in a vacant position for which she was qualified. In a case like this where the plaintiff does not claim to have direct evidence of an employer's discriminatory intent, she must satisfy the burden-shifting test set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in order to prevail on her discrimination claims. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001).

Ratliff bears the initial burden of establishing a prima facie case under the ADA by demonstrating that: (1) she belongs to the protected group; (2) she performed her job satisfactorily; (3) she was subjected to an adverse employment action; and (4) similarly situated employees received more favorable treatment. *See id.* If Ratliff fails to prove any of these elements, her claim fails, and the Court need not proceed any further with the *McDonnell Douglas* analysis. *Id.*

The City contends Ratliff cannot even satisfy the first element of the test, that is, belonging to a protected group covered by the ADA. To be considered a member of the protected group, Ratliff must demonstrate that: (1) she is disabled; (2) she has the ability to perform the essential functions of the laborer position; and (3) if she is unable to perform the essential functions of the laborer position without accommodation, there exists some reasonable accommodation that would allow her to so perform. *See id.* at 925.

*A. Disability*

Ratliff contends her asthma caused breathing problems and chest pains that prevented her from working as a laborer on garbage truck duty and thus she suffers from a "disability" under the ADA. A "disability" is defined as a physical impairment that "substantially limits one or more of the major life activities of such individual. . ." 42 U.S.C. § 12102 (2)(A); *Toyota Motor Manuf., Kentucky, Inc., v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 689 (2002). In assessing whether Ratliff's asthma qualifies as a disability for purposes of the ADA, the Court asks two questions: (1) does Ratliff suffer from a physical or mental impairment; and (2) if so, does her impairment substantially limit an identified major life activity. *See Bragdon v. Abbott*, 524 U.S. 624 (1998).

1. Physical Impairment

Asthma qualifies as a "physical impairment" because it adversely affects the respiratory system.

-5-

*See Bond v. Sheahan*, 152 F. Supp. 2d 1055, 1064 (N.D. Ill. 2001). However, the City contends there is no medical evidence Ratliff suffered from asthma during her six years of employment from 1993 to 1999. In support of that contention, the City points to Ratliff's March 1995 employment application in which she represented that she did not suffer from shortness of breath, asthma, wheezing, or chest pain, and the testimony of Dr. Paul, and Dr. Rachel Amdur, both of whom examined Ratliff when she worked for the City, but could not conclusively state that Ratliff indeed had asthma. Ratliff responds that her treating physicians, Dr. Ann Krantz, Dr. Aline Rizea and Dr. David Goldberg, have all diagnosed her with asthma. But their testimony is irrelevant because, as the Court explained in June 2001 when it granted the City's motion to bar Ratliff's experts, those doctors did not treat Ratliff until *after* her employment with the City ended, and thus they cannot offer an opinion on whether Ratliff had asthma while she worked for the City.

Nevertheless, Ratliff has produced a December 1994 Emergency Service Record from Saint Margaret Mercy Healthcare Centers that notes she was wheezing heavily before she passed out, and she has asthma. (*See* Pl.'s App. of Exs. to her Statement of Additional Facts Precluding Summ. J. in Favor of Def., Ex. 14). Furthermore, Ratliff testified that on several occasions in 1998 she used an inhaler at work. Thus, drawing all inferences in favor of Ratliff as it must on summary judgment, the Court finds she has arguably demonstrated a physical impairment.

### 2. Substantially Limits Major Life Activities

However, "[m]erely having an impairment does not make one disabled for purposes of the ADA. [Plaintiffs] also need to demonstrate that the impairment limits a major life activity." *Toyota*, 122 S. Ct. at 690. In other words, to prove disability status, Ratliff must show that she has "an impairment that prevents or severely restricts [her] from doing activities that are of central importance to most people's daily lives." *Id.* at 691. Ratliff argues that her asthma substantially limits the major life activities of

breathing and walking.² Although breathing and walking undoubtedly constitute "major life activities" under the ADA, *see Bond*, 152 F. Supp. 2d at 1064 (collecting cases), the Court must determine if Ratliff has submitted sufficient evidence that she is substantially limited in those areas.

Because asthma is the type of impairment that can vary significantly in severity, *see id.* at 1059, n.2, it is crucial that Ratliff demonstrate that her asthma has a permanent or long-term impact. *Toyota*, 122 S. Ct. at 692. Indeed, the ADA's use of the word "substantial" "clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." *Id.* at 630.

a. Breathing

Ratliff first points to the testimony of Dr. Rizea that Ratliff experienced shortness of breath after taking 20 steps or lifting heavy objects. However, Ratliff ignores Dr. Rizea's testimony that Ratliff was overweight, had a family history of diabetes and hypertension, and symptoms of chest pain and a slightly enlarged heart, which suggested possible heart problems. In fact, Dr. Rizea explained that when Ratliff first presented with chest pains and breathing problems, she was originally referred to the cardiology clinic for testing, but neither of the two relevant tests to detect heart problems could be performed until Ratliff lost 30-40 lbs, a feat Ratliff had thus far been unable to accomplish. Dr. Rizea's testimony, therefore, does not establish a causal connection between Ratliff's breathing difficulties and her asthma.

Next Ratliff claims to have experienced severe asthma attacks on several occasions between June and December 1998 that caused her to vomit. The record does reflect that on two occasions an ambulance was called to assist Ratliff who was vomiting on the street, but Ratliff offers neither medical records or other testimony to corroborate her contention that it was asthma, and not the foul odors emanating from the garbage truck, that caused her to become ill. Indeed, Dr. Amdur, who treated Ratliff in 1997 and 1998,

---

²In her Complaint, Ratliff identified breathing, lifting and working as the affected major life activities, (Compl. ¶ 37), but in responding to the City's summary judgment motion, she limits her arguments to breathing and walking.

Ratliff additionally argues that her asthma attacks were so severe that they were often not helped by medication. However, she could specifically recall only one instance when she worked for the City where that situation occurred, and, once again, offers nothing more than her self-serving statements to substantiate her claim. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 764 (7th Cir. 2001) ("[A] bald declaration, without anything more, cannot create a genuine issue of material fact as to [plaintiff] being disabled that would preclude summary judgment."). In fact, both Drs. Rizea and Anne Krantz testified that Ratliff's symptoms have improved with treatment to the point where Ratliff feels much better. Consequently, the evidence in this record does not reflect that Ratliff's asthma substantially limits her ability to breathe. *See Sutton v. United Airlines, Inc.*, 119 S. Ct. 2139, 2146-47 (1999) ("A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity.").[3]

### b. Walking

Likewise, the Court does not believe Ratliff has established that asthma substantially limits her ability to walk. Ratliff is correct that Dr. Rizea found it problematic that Ratliff, a 35 year old woman, reported having problems walking ten blocks. However, that limitation clearly did not constitute a significant restriction on Ratliff's ability to walk while she worked for the City, given the testimony in the record that she continued to perform her duties as a laborer, particularly standing and walking for periods of time. Indeed, the Court finds it telling that Dr. Paul imposed a 15 lbs. lifting restriction, but mentioned nothing about Ratliff's ability to walk. Moreover, Ratliff testified that she currently walks

---

[3] Ratliff also maintains she regularly experiences gasping, chest pains, sore throats and eczema because of her asthma, (Pl.'s Statement of Additional Facts, ¶ 4), but because she failed to support that factual assertion with a citation to the record, it will be disregarded by the Court. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities.").

testified that asthma does not commonly cause vomiting.

for about 30 minutes per day, twice a week, attends church where she stands and kneels for an hour at a time, washes the floor and engages in various sports activities. Based on that evidence, the Court concludes Ratliff's asthma only moderately restricts her walking, and thus she is not substantially limited in the major life activity of walking. *See Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 951 (7th Cir. 2000); *Bond*, 152 F. Supp. 3d at 1067.

In conclusion, the Court finds Ratliff has not produced enough evidence such that a reasonable jury could conclude that her asthma is so severe that it substantially limits her major life activities of breathing or walking. *See Anderson*, 477 U.S. at 247. Consequently, she is not disabled under the ADA.

### B. Perceived Disability

Ratliff also argues that the City regarded her as disabled and thus she fits the definition of disability for purposes of the ADA. *See* 42 U.S.C. § 12102(2)(C). "An individual may prove a 'regarded as' claim by showing that either (1) a covered mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Amadio*, 238 F.3d at 925. However, "it is not enough to show that the employer knew of the plaintiff's impairment." *Id.* Rather, "[t]he plaintiff must also show that the employer believed that one or more of the plaintiff's major life activities were substantially limited by the plaintiff's impairment." *Id.*

As an initial matter, the Court does not believe Ratliff adequately raised the "regarded as" disabled issue in her complaint. *See Cebertowicz v. Motorola, Inc.*, 178 F. Supp.2d 949, 953 (N.D. Ill. 2001). But even if she has, her case is clearly distinguishable from the situation presented in *Reimer v. Illinois Dept. of Transp.*, 148 F.3d 800 (7th Cir. 1998). There the Seventh Circuit concluded the evidence presented at trial was sufficient to support the jury's finding that plaintiff's employer, who had reassigned him to an outdoors position due to an erroneous belief that fumes and dust inside would trigger an asthma attack, perceived his asthma as substantially limiting his ability to breathe. *Id.* at 807. Ratliff, in contrast, has not

identified a shred of evidence that would suggest the City regarded her as substantially limited in the areas of breathing or walking. It is undisputed that Ratliff did not return to garbage truck duty after she ended her personal business leave as of March 24, 1999, because Dr. Paul had imposed a 15 lbs. weight lifting restriction, and the City maintained that laborers had to be able to lift at least 50 lbs. Ratliff has not shown that the City even expressed a concern that the lifting restriction might affect her ability to engage in the major life activities of breathing and walking. Thus, she has failed to show that the City regarded her as being disabled. *See Amadio*, 238 F.3d at 927.

## C. *Qualified Individual*

Even if Ratliff had been able to establish a disability under the ADA, she must still show that she is a qualified individual, meaning that, with or without reasonable accommodation, she could still perform the essential functions of the laborer position. *Id.* "To determine the essential functions of a position, a court may consider, but is not limited to, evidence of the employer's judgment of a position, written job descriptions prepared before advertising or interviewing applicants for the job, the work experience of past incumbents of the job, and the work experience of past incumbents of the job, and the work experience of current incumbents in similar jobs." *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001).

The City points to the July 1992 job description stating that an essential duty of a laborer includes, among other things, the ability to lift well over 15 pounds, and argues that in light of the lifting restriction imposed by Dr. Paul, Ratliff could not perform an essential function of her job. Ratliff counters that the job description is outdated and laborers were not required to perform all of the functions listed as essential. While the City concedes that laborers probably need not be able to lift 75-100 lbs. as stated in the job description, Craig Kumerow, Ratliff's business agent, testified that regardless of which of the four positions laborers performed, they were all required to lift over 15 lbs. Furthermore, Mark Payne, a laborer assigned to garbage truck duty with Ratliff, agreed that the job description was fair. To refute their testimony, Ratliff offers nothing more than her personal belief that the duties listed in the job description

-10-

were not essential. Significantly, when asked the amount of pounds laborers had to be able to lift, Ratliff testified at her deposition that she had no idea. Ratliff, therefore, has failed to offer sufficient evidence to show that the City's understanding of the essential functions of the laborer position, particularly the lifting requirement, is incorrect. *See Basith*, 241 F.3d at 928.

At a minimum, then, the City has established that the ability to lift at least 15 lbs. is an essential function of the laborer position. Ratliff does not attempt to suggest that she could meet that requirement. Instead, she argues that her lengthy tenure with the City is the best evidence of her qualified status. It is not. The ADA only protects "qualified individuals with a disability." Thus, the only issue here is whether Ratliff can perform the essential functions of her job. *Id.* at 927. That Ratliff may have previously performed the laborer position without incident is irrelevant. Accordingly, the Court finds Ratliff has not demonstrated that she is a qualified individual with a disability for purposes of the ADA.

### D. Reasonable Accommodation

Even if Ratliff had shown that she was a qualified individual who nonetheless could not perform the essential functions of her job, the Court would then consider if any reasonable accommodation would help her to perform those functions. *Amadio*, 238 F.3d at 928. Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices...and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). However, an employer is not required to grant an accommodation that "would impose an undue hardship on the operation of [its] business." *See* 42 U.S.C. § 12112(b)(5)(A).

Ratliff contends the City failed to engage in the interactive process with her on the various occasions when she requested an accommodation. "An employee has the *initial* duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations." *Beck v. Univ. of Wis. Board of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) (emphasis added). "Once the employee provides this information, the employer has a responsibility to start the interactive process."

*Bond*, 152 F. Supp. 2d at 1073. However, the mere fact that an employer fails to engage in such a process does not constitute a *per se* violation of the ADA. *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000). Rather, the ADA imposes liability only if "the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual." *Id.*

Ratliff maintains that she sought accommodations from the City in June 1998, December 1998, and April 1999, but the City ignored her requests. First, Ratliff did submit to the City in June 1998, a written request for accommodation, but in response to all questions regarding her disability, she listed "N/A," meaning not applicable. At her deposition, Ratliff explained that she had done this because she was not sure if she had a disability so she did not write any medical condition. The ADA only requires "reasonable accommodations to the *known* physical or mental limitations" of an employee. 42 U.S.C. § 12115(b)(5)(A) (emphasis added). Therefore, "an employer that has no knowledge of an employee's disability cannot be held liable for not accommodating the employee." *Beck*, 75 F.3d at 1134. Ratliff's responses on the "Request for Reasonable Accommodation" form were inadequate to inform the City of the nature of her disability. Thus the City had no duty in June 1998 to accommodate her. Moreover, Ratliff sought a transfer to a supervisory position. But because the duty of reasonable accommodation imposed by the ADA does not require employers to promote disabled employees, the City was not obligated to grant her the specific accommodation she requested. *See Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998).

Next, Ratliff claims that between November 1998 and January 1999, she asked her foreman, Larry Hopewell, her boss Bruce Bertalmio, and the Assistant Commissioner of Sewers, Rich Johnson, to transfer her to a position other than garbage truck duty because of her asthma. Sometime in January 1999, Johnson informed Ratliff that she needed to bring in a doctor's note substantiating her medical condition or take a leave of absence. Ratliff did not submit any medical documentation to the City at that time; instead, she applied for and was granted a three-month personal business leave, effective January 30, 1999

through April 30, 1999. Immediately prior to beginning her leave, Ratliff also went to Russell Baggett in the City's Department of Personnel and requested any job other than a laborer position. In response, Baggett says he gave Ratliff several forms that asked about her previous employment history, experience and educational background, and told her to fill them out completely and schedule an appointment to see him. Ratliff, however, maintains Baggett simply told her where personnel was located, and that there were lots of jobs there. Ratliff could not recall, though, if she completed any applications for employment as a result of her meeting with Baggett, or if she took any steps to seek out those jobs Baggett had mentioned were available.

The ADA envisions "a flexible, interactive process by which the employer and employee determine the appropriate reasonable accommodation." *Rehling*, 207 F.3d at 1015. Indeed, a primary purpose of this process is to afford the employer an opportunity to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). The facts here reveal that the City and Ratliff did engage in such an interactive process when she conversed with Baggett. The Court finds Ratliff's testimony that Baggett, who worked in the City's Department of Personnel, did nothing more than direct her to go to the City's Department of Personnel to apply for another job, wholly incredible. Ratliff makes no attempt in responding to the City's summary judgment to explain the clear inconsistency of her statement. The City attempted to question Ratliff at her deposition about the basis for her response by asking if Baggett worked for Personnel, but Ratliff tersely responded "if you say so." (Ratliff Dep. Tr. at p. 398).

The mere existence of a factual dispute as to exactly what transpired when Ratliff met with Baggett in January 1999 is not enough to defeat a motion for summary judgment. Rather, Ratliff must identify a factual dispute that is "genuine," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247. Ratliff does concede Baggett informed her that other positions existed within the City, but she could not recall what actions, if any, she took to

-13-

apply for those jobs. The Court, therefore, does not believe that upon consideration of the minimal evidence presented by Ratliff, a jury would be persuaded that in January 1999, the City either failed to participate in the interactive process in good faith, or respond to her request for accommodation. *See Beck*, 75 F.3d at 1135-36.

Finally, in late March 1999, Ratliff provided the City with a doctor's note dated March 25, 1999, indicating that she was advised not to lift heavy weights, and then in late April 1999, she brought in a second note dated April 22, 1999, specifying that she could not lift over 15 pounds of weight. Ratliff contends the City refused to work with her in order to determine whether an available position existed that would accommodate her disability and its restrictions, but the facts in the record do not support her contention. Catherine Hennessy, the City's Assistant Commissioner for the Department of Streets and Sanitation, initially told Ratliff that because there were no light duty laborer positions available, her choices were limited to either returning to work or applying for another leave of absence until she could perform her job. But once Ratliff said she no longer wanted to work as a laborer, Hennessy told her to go the Department of Personnel to be evaluated for another position that could accommodate her restrictions. Ratliff admits she never went to Personnel to follow up on available positions.

The interactive process "requires participation by both parties." *Id.* at 1135. The break down occurred here because Ratliff failed to "make reasonable efforts to help [the City] determine what specific accommodations [were] necessary." *Id.* By sending Ratliff to the department that processed City employees' reasonable accommodation requests, the City attempted to fulfill its role of determining whether specific actions needed to be taken in order to provide Ratliff with an accommodation. Ratliff's initial failure to provide the City with the necessary information about her medical condition, and then her subsequent refusal to communicate with Personnel, is what impeded the interactive process in this case. Because the evidence reflects that the City indeed made reasonable efforts to accommodate Ratliff once it became aware of her disability, Ratliff cannot show that the City violated the ADA.

Ratliff has failed to produce enough evidence to satisfy her burden of establishing the first prong of the prima facie case for an ADA violation, namely that she belongs to a protected group. Therefore this Court need not proceed any further with the *McDonnell Douglas* analysis. The City is entitled to summary judgment on Ratliff's claims of disability discrimination and failure to accommodate in violation of the ADA.

## II. Ratliff's Motion for Partial Summary Judgment (ADA Claims)

Ratliff filed a cross-motion for partial summary judgment, contending the City's medical leave policy is a per se violation of the ADA. However, her claim fails for two reasons. First, as the Court has already noted, Ratliff is not a qualified individual with a disability as defined by the ADA. Consequently, she lacks standing to challenge the City's medical leave policy as facially invalid. *Contreras*, 237 F.3d at 765-66. More significantly, as the City points out, the legality of its medical leave policy is not at issue in this case because Ratliff requested and was granted a *personal business leave of absence* for non-medical reasons. At no time during her employment with the City did Ratliff seek a medical leave of absence. As such, she cannot show that she suffered any injury as a result of the City's application of its medical leave policy. The Court therefore denies her motion for partial summary judgment.

## III. Ratliff's Retaliation Claims

Ratliff claims the City terminated her because she requested a transfer to accommodate her disability, and because she complained about the City's unfair refusal to transfer her. The City, on the other hand, maintains that it terminated Ratliff for missing more than five consecutive days of work since March 22, 1999, without calling an authorized Department supervisor. To establish a prima facie case of retaliation, Ratliff must show that (1) she engaged in statutorily protected activity; (2) she was subjected to an adverse employment action; (3) she was performing her job in a satisfactory manner; and (4) she was treated less favorably than any other similarly situated employee who did not engage in such protected activity. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (clarifying the

proper standard for analyzing retaliation claims under *McDonnell Douglas* on summary judgment); *Smith v. Allstate Ins. Corp.*, No. 99 C 0906, 2002 WL 485374, at *16 (N.D. Ill. Mar. 29, 2002). If Ratliff succeeds in meeting her burden, then the City must articulate a legitimate non-discriminatory reason for the adverse employment action. If the City "presents unrebutted evidence of a noninvidious reason for the adverse action, [it] is entitled to summary judgment. Otherwise there must be a trial." *Stone*, 281 F.3d at 644.

Because the parties' arguments primarily concern the City's motive behind its termination of Ratliff, the Court will assume for the sake of argument that Ratliff establishes a prima facie case of retaliation and proceed to decide if the City's explanation passes muster. In the April 29, 1999 termination letter, the City explained that Ratliff had been absent for five consecutive work days, which, pursuant to the collective bargaining agreement, caused an automatic break in service and termination from employment. Catherine Hennessy, who made the decision to terminate Ratliff, filed an affidavit attesting that Ratliff's time record (Ex. 5 to Hennessy's Affidavit) confirmed Ratliff had been "AN" or absent no leave, for more than five consecutive business days, meaning she did not report to work or call her designated supervisor within an hour of her shift start. Hennessy also attested to terminating fifteen other laborers from August 1998 through April 1999, for violating the same provision of the collective bargaining agreement, and that none of those individuals had sought an accommodation under the ADA or complained of disability discrimination. The City therefore has sustained its burden of articulating a legitimate non-discriminatory reason for firing Ratliff.

To defeat summary judgment, Ratliff must now demonstrate that a genuine issue of material fact exists concerning the City's reason for terminating her employment. Ratliff points to a letter dated May 3, 1999, she wrote to Hennessy outlining her actions during the period between March 22, 1999, when she requested an early return from her personal business leave of absence, and April 29, 1999, when she was terminated. Ratliff's letter, however, is insufficient to create a factual dispute regarding the City's

motive, in that it does not directly refute the City's contention that she failed to call in to a designated supervisor. For example, from April 9 to April 13, 1999, Ratliff claims that on the first day, she called the 119th Street office but received no reply, on the second and third days, there was no reply from that office, and on the fourth and fifth days she called but there was no work assignment. Exactly why Ratliff kept contacting Rich Johnson at the 119th Street Office on the Far South Side of Chicago for work assignments, when she was already assigned to Loop Operations on Lower Wacker Drive under Bruce Bertalmio, is unclear. Nevertheless, it is Ratliff's burden to offer rebuttal evidence to refute the City's argument that she failed to contact the appropriate supervisor to notify him of her absence from work, and that she has not done. Indeed, her own document indicates that she spent most days awaiting a reply from Johnson, not calling in to report that she would not be at work in Loop Operations on Lower Wacker Drive.

Ratliff also maintains that the City's retaliatory motive is evinced by the fact that after she asked Hennessy for a reasonable accommodation on April 26, 1999, the City terminated her for absenteeism three days later, prior to the expiration of her personal business leave. First, it is disingenuous for Ratliff to suggest she was still on leave on April 29, when the record is clear that she asked on March 22, 1999, if she could return to work early, and the City allowed her to do so, effective March 24, 1999. Furthermore, Ratliff has not demonstrated that visiting Hennessy to inquire about other employment options is equivalent to "notifying an authorized Employer representative" that she would be absent from work, as required by the collective bargaining agreement.

Ratliff has not presented any evidence to suggest that the City harbored a dishonest motive when it terminated her employment under the "break in service" provision of the collective bargaining agreement. All she offers is speculation that the City created an elaborate ruse to fire her simply because she requested an accommodation. This record offers no support whatsoever for her fanciful belief.

Because Ratliff has not shown that genuine issues of material fact exist that warrant a trial on her

-17-

retaliation claims, the City is entitled to summary judgment. *See Stone*, 281 F.3d at 644.[4]

## CONCLUSION

The City's motion for summary judgment is granted, and Ratliff's motion for partial summary judgment is denied.

**IT IS SO ORDERED.**

_____
WILLIAM J. HIBBLER, DISTRICT JUDGE

DATED: August 28, 2002

---

[4]Ratliff additionally contends the City retaliated against employees who asserted their civil rights by placing them on garbage truck duty until they quit or could be terminated. Not only does Ratliff fail to offer any evidentiary support for this accusation, but she also cannot show that placement on garbage truck duty even qualifies as an adverse employment action to support a retaliation claim.

-18-